**In re Francine GRECO, Debtor.**

**Francine Greco, Plaintiff,**

**v.**

**Sallie Mae Servicing Corp., Defendant.**

**Bankruptcy No. 99–31544DAS.**
**Adversary No. 00–0206.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 14, 2000.

---

Kenneth Richmond, Philadelphia, PA, for debtor.

Daniel J. Tann, Philadelphia, PA, for Sallie Mae.

Virginia R. Powel, Ass't. U.S. Attorney, Philadelphia, PA, for the USA.

Jennifer A. Furman, Philadelphia, PA, for ECMC.

Barry A. Solodky, Lancaster, PA, for trustee.

Frederic Baker, Ass't. U.S. Trustee, Philadelphia, PA, for United States Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

This adversary proceeding ("the Proceeding") determines whether a chiropractic physician's Health Education Assistance loans ("HEAL") and non-HEAL student loans are eligible for discharge in her Chapter 7 bankruptcy case. After making what she apparently recognizes as weak arguments that she meets the applicable stringent requirements for having any of these student loans discharged, the Debtor poses a series of exotic arguments in her defense. Specifically, she erroneously asserts that, at the time that the loan obligations were incurred in the mid–1980's, student loans funded by private lenders were not regulated by federal law, in support of a contention that subsequent amendments to the Bankruptcy Code have illegally impaired the Debtor's contractual rights, in violation of the Contracts Clause, Article I, clause 10 of the United States Constitution. Further, the Debtor asserts that these allegedly amended standards established for obtaining discharges of student loans are punitive in nature and amount to a violation of the Ex Post Facto Clause set forth in Article I, Section 9, clause 3 of the United States Constitution. Finally, the Debtor argues that her right to equal protection of the laws, as guaranteed by Fourteenth Amendment of the Constitution, is violated if we consider her husband's income in determining whether repayment of student loans would impose an undue hardship on her.

We find the Debtor's defenses to be unavailing. Specifically, we find the Debtor does not satisfy at least the second of the three prongs of the test set forth in *In re Faish,* 72 F.3d 298, 304–06 (3d Cir. 1995), *cert. denied,* 518 U.S. 1009, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996), for determining dischargeability of non-HEAL student loans, even if her husband's income is not considered, and thus cannot meet the more stringent standard for discharge of HEAL loans. We further find that all of the Debtor's exotic arguments are without merit for the following reasons. Ex post facto issues apply only in criminal cases and civil legislation having a punitive element. We are unpersuaded by the Debtor's argument that there is a "punitive" purpose in requiring her to repay her student loans. The Contracts Clause prohibits only *states* from enacting laws that interfere with valid contracts, while, in the instant matter, the Debtor's loan obligations arise out of *federal* statutes. Moreover, the amendments to 11 U.S.C. § 523(a)(8) referenced by the Debtor as detrimental to her interests were enacted in 1979, prior to the loans in issue. Finally, the Debtor's equal protection argument fails because married people are not a suspect classification; therefore, the Government must only meet the burden of proving there is a rational basis for its actions. We find that it is quite rational to conclude that the income of a debtor's spouse is relevant to assessing a debtor's financial ability to repay student loans.

### B. PROCEDURAL AND FACTUAL HISTORY

FRANCINE GRECO (the "Debtor") filed an individual voluntary Chapter 7

bankruptcy petition on September 13, 1999. No creditors challenged the Debtor's exemptions, her discharge, or the dischargeability of any of her otherwise dischargeable debts, and the Debtor received a discharge on January 10, 2000, pursuant to 11 U.S.C. § 727. The only event of any consequence in the case was an initial refusal of the Debtor's counsel to file a fee application supporting receipt of a $2200 fee paid by the Debtor's husband, Raymond Wisdo, a chiropractic physician, which is addressed in *In re Greco*, 246 B.R. 226 (Bankr.E.D.Pa.2000) (*"Greco I "*). The fee application was ultimately filed and approved.

Subsequent to the Debtor's Chapter 7 discharge, the Debtor, also a chiropractic physician, who disclosed a number of HEAL and non-HEAL student loans on her bankruptcy petition, commenced the instant adversary proceeding against SALLIE MAE SERVICING CORP. ("Sallie Mae"), which she alleged held her student loans, on March 13, 2000, seeking a discharge of all of her student loans on the grounds that the loans constituted an undue hardship pursuant to 11 U.S.C. § 523(a)(8), and that failing to discharge them would be unconscionable pursuant to 42 U.S.C. § 294f(g). Further, she asserted a Count asserting "[u]constitutionality of 523(a)(8) as applied because it represents a proscribed Ex-post Facto law and [i]mpairment of [c]ontract."

Not only Sallie Mae, but also the United States of America ("the USA") and the Educational Credit Management Corporation ("ECMC"), answered the Complaint and asserted Counterclaims against the Debtor for the balances due on their respective debts. The parties stipulated that, following the Debtor's discharge, the Student Loan Marketing Association ("SLMA") filed an insurance claim with the United States Department of Health and Human Services ("HHS") in April, 2000, and HHS, an agency of the USA, paid the claim in the amount of $31,789.00

and received an assignment of the Debtor's HEAL loans.

A trial of the Proceeding was initially scheduled on May 4, 2000, but was continued to July 11, 2000, with the agreement that no further continuances would be granted in this matter. The trial was held as scheduled. ECMC and the USA presented trial briefs almost immediately thereafter, and all parties were given the opportunity to submit briefs or supplements thereto on or before July 28, 2000. Only the Debtor filed a further post-trial brief on July 28, 2000.

At the trial, it was established that the Debtor incurred five HEAL loans while she was a student at Palmer College of Chiropractic Medicine ("Palmer") in California between 1985 and 1989. Prior to attending Palmer, the Debtor also attended Harcum Junior College and graduated from Villanova University with a degree in pre-medicine. All of the loans arise from the years in which the Debtor attended Palmer.

Following her graduation from Palmer in June, 1989, the Debtor's repayment on her HEAL loans was to begin in May, 1990. The Debtor applied for three forebearances, all of which were approved. The Debtor commenced payments thereafter and testified that she remitted approximately $80,000 in payments on her loans.

The parties have stipulated that the Debtor nevertheless still owes $31,789 plus interest at the rate of 8.750% per annum and 7.62% per day on her HEAL loans. The Debtor also applied for and received funds from nine non-HEAL loans, now held by ECMC, between 1986 and 1988. The parties have stipulated that the Debtor owes $21,720.18 on these non-HEAL loans.

The only witness testifying at the hearing in addition to the Debtor was Wisdo. Wisdo testified that he is also a Palmer graduate and a practicing chiropractic physician and had formerly served as President of the Pennsylvania Academy of

Chiropractic Physicians. For that reason, he was permitted to offer testimony concerning the decline in patient load among members of the chiropractic profession generally as a result of the emergence of , managed-care insurance programs. Wisdo stated that managed-care insurance programs, as well as auto insurance companies, have virtually cut off payment and patient referral to chiropractors.

Although both Wisdo and the Debtor see patients from a single office space within their home, they have maintained separate practices and office records. Wisdo earned $8,700 from income at his home office during 1999. However, he is also employed as a chiropractor with Delaware County Pain Management and in 1999 he earned $40,715 in that capacity.

The couple's joint 1999 income tax return reveals that Wisdow was the primary source of household income, having earned $49,415 of the couple's combined 1999 adjusted gross income totaling $58,324. The Debtor argues her income is steadily declining and she is no longer able to secure employment away from home because it would not be cost-effective once she pays for day care for the couple's two pre-school age children. The Debtor testified that Wisdo depleted a personal injury recovery in contributing to considerable repayments on her student loans, but that he refuses to continue to make these payments.

The Debtor alleges it would be unconscionable, as well as an undue hardship, to mandate that she repay her student loans because her monthly income would not cover her other monthly expenses and allow her to support her dependents if Wisdo's income were not a consideration. She further contends that, as a result of the changes in health insurance patterns described by Wisdo, her bleak employment prospects are likely to persist indefinitely. She also maintains, we find accurately, that she demonstrated that she has made a good faith effort to repay her loans.

## C. DISCUSSION

1. *The Debtor Has Failed to Demonstrate that Repaying her Non-HEAL Student Loans Would Constitute an Undue Hardship Pursuant to 11 U.S.C. § 523(a)(8), Particularly Being Unable to Show that Her Finances Could Not and Will Not Be Likely to Change for the Better in the Future.*

We begin our legal analysis by reference to 11 U.S.C. § 523(a)(8) of the Bankruptcy Code, which provides as follows:

(a) A discharge under section 727, of this title does not discharge an individual debtor from any debt—

. . .

(8) for an educational benefit over payment or loan made, insured or guaranteed by a governmental unit . . . unless excepting such debt from discharge under this paragraph Will impose an undue hardship on the debtor and the debtor's dependents;

. . .

■ The undue hardship standard set forth in 523(a)(8) was broken down into a three prong test in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395, 396 (2d Cir.1987). To find non-HEAL student loans dischargeable in bankruptcy, the *Brunner* test requires a debtor to prove that (1) the debtor cannot maintain a minimal standard of living for self and dependents if required to repay the loans in addition to the debtor's regular monthly expenses; (2) there are circumstances which indicate that the current situation is not likely to change for a significant period of time; and (3) the debtor has made good faith effort to repay the student loans. *Id.*

■ In *Faish*, 72 F.3d at 305–06, this Circuit adopted the three-prong *Brunner* test as the standard which bankruptcy courts must apply to determine whether an undue hardship exists that would render a debtor's non-HEAL student loans dischargeable. The burden of establishing

each prong of the *Brunner* test lies with the debtor. *Id.* at 306. Further, *Faish* explicitly states that equitable concerns or additional factors not contemplated by the *Brunner* test should not be given consideration. *Id.*

Factually, we note that the *Faish* debtor had a Master's Degree in Public Health and Community Health Services Administration. *Id.* at 300. At the time of filing for bankruptcy, her gross income was $27,000, and she owed $32,989.33 in student loans. *Id.* The debtor was a single mother who did not receive any child support payments, and was trying to save money to move to a safer neighborhood so that her child could enroll in a better quality school district. *Id.* She also suffered from Crohn's disease, and could not afford to own an automobile. *Id.*

The facts of the instant case are not compelling when viewed in light of the debtors in *Faish* and *Brunner,* the latter of whom was an unemployed recent social work master's degree graduate, 831 F.2d at 396, both of whose debts were held to be nondischargeable. The Debtor's earnings clearly exceed those of the unemployed *Brunner* debtor. The most that the Debtor proved was that, when her financial circumstances are considered in isolation, apart from the circumstances of her marriage to Wisdo, she may be currently unable to independently pay · her living expenses and repay her student loans. However, as our discussion at pages 678–80 *infra* indicates, we believe that it is not only appropriate, but necessary, to consider her husband's financial circumstances.

 However, assuming *arguendo* that we were compelled to consider her circumstances in isolation, we observe that the Debtor's merely demonstrating current income is insufficient to pay her living expenses and also repay student loans is insufficient to meet the *Brunner/Faish* test. That test requires definitive evidence that the Debtor's earning potential will not improve in the future. The evidence in the record and the information offered at the hearing lead us to conclude that the Debtor has failed to satisfy the second prong of the *Faish* test by demonstrating her current situation is unlikely to improve, even if Wisdo's name is not considered.

The Debtor maintains that the evidence of record supports the conclusion that her income has decreased steadily in recent years and is unlikely to improve in the future as a result of permanent changes in managed health care. Because she believes these changes are not simply a temporary trend, the Debtor cannot foresee a future time when she will have the ability to ˋpay the balance ·of her student loan obligations.

However, the Debtor's argument is rendered doubtful by considering that she and her husband share the same occupation and graduated from the same chiropractic school. Wisdo's 1999 income was approximately $49,000. Thus, it is difficult for us to accept the conclusion on this record that the Debtor's income could not greatly increase from the sum of about $10,000 that she ·earned in. 1999 if she were to secure a full-time position within her occupation. And, if the Debtor were able to secure a position with an income comparable to that of her husband, clearly the she could afford to pay for day care for their two young children as well as repay her student loans in full.

Wisdo testified at the hearing that he pays most of the monthly household expenses, including the mortgage on the family home. The Debtor thus does not pay her own mortgage, rent for her home, nor rent for her office. If she were to secure a position comparable to Wisdo's, she would clearly be able to repay her student loans, since Wisdo has proven that he alone has the financial ability to pay a large share of the household expenses.

We note that, in *Greco I,* it was established that Wisdo paid $2,200 in attorneys' fees in connection with the Debtor's bank-

ruptcy case, some of which services included research relating to the effect of the bankruptcy petition on the Debtor's student loans. 246 B.R. at 229. Thus, it seems clear that Wisdo is financially able to assist the Debtor with her finances and he appears willing to contribute to certain of her expenses.

The testimony offered by the Debtor at trial does not reveal a diligent effort on her part to secure a stable, salaried job outside the home. Particularly, the Debtor was unwilling to seek full-time employment out of the home based on her belief it would not be cost-efficient once she paid for day care for her two young children. However, when the Debtor's earning potential is considered in light of what her husband presently earns, it would seem that the Debtor's argument is not very compelling. Indeed, the couple's oldest child will be attending public school in the fall and this will further decrease the money that will have to be spent on day care.

The Court also notes that the Debtor testified that her parents have provided financial support, as well as child care at various times, and assistance available from any other source is a factor which we must take into consideration in determining the Debtor's overall financial picture. *See In re Clarke, Clarke v. PHEAA,* Bankr.No. 99–16597DAS, Adv. No. 99–0813 (Bankr.E.D.Pa. Dec. 10, 1999) (middle-aged single parent working as a public defender held not entitled to a § 523(a)(8) discharge, particularly because relatives helped her maintain a middle-class standard of living).

Furthermore, if the situation in the chiropractic profession is as bleak as the Debtor claims, we note that the Debtor has an undergraduate pre-medical degree, presumably in the sciences. This would render her qualified for a number of well-paid positions, and would certainly prevent her from being forced to accept a job paying only a minimal wage. As one example, there are many pharmaceutical companies located in the Philadelphia area

that employ college graduates with undergraduate science degrees who have no other advanced educational background. During her testimony, the Debtor gave no indication that she has made any attempts whatsoever to secure a job within any branch of the sciences.

Although the Debtor has cited us to many student loan cases in her brief, we find that, in virtually every case where student loans were discharged, the circumstances clearly revealed an undue hardship that the Debtor in this case does not have to overcome. The most factually analogous case that we could locate is *In re Peel,* 240 B.R. 387 (Bankr.N.D.Cal.1999), in which a former chiropractor who was a Palmer graduate received a discharge of non-HEAL student loans on the grounds that they amounted to an undue hardship. However, in contrast to the instant Debtor, at the time of filing for bankruptcy, the *Peel* debtor received little assistance from parents or a spouse, and was compelled to devote the bulk of his income to rent, food and utilities. *Id.* at 390–91. Further, the *Peel* debtor had limited his expenses by living in an apartment without a kitchen or laundry facilities, and he drove a nine-year-old car with over 108,000 miles on the odometer. *Id.* at 391–94.

The instant Debtor has not alleged a thrifty lifestyle. The Court notes that the Debtor lives in a comfortable suburban home owned by Wisdo. Also, Wisdo "assists the Debtor" in making the monthly lease payments on a one-year-old minivan. In addition, the *Peel* debtor attempted to start a business out of his home and eventually entered an MBA training program and had began a different career. *Id.* at 394–95. Here, the Debtor has not demonstrated any efforts to seek employment in another field. Thus, we are unpersuaded that the Debtor has exhausted her potential job opportunities.

As a result, even were we to discount Wisdo's presence and economic benefit to the Debtor, which we reiterate would be

inappropriate, the Debtor would be unable to satisfy the second prong of the *Brunner /Faish* test on the record. We therefore have no hesitancy in (including that the Debtor's non-HEAL loans are nondischargeable).

> *2. Since the Debtor Does Not Meet the Less Stringent "Undue Hardship" Test for Discharging Non–HEAL Loans, We Must Conclude that She Does Not Meet the "Unconscionability Standard Needed" to Discharge Her HEAL Loans.*

The standards for obtaining discharge of HEAL loans are set forth in 42 U.S.C. § 292f(g) as follows:

> g) Conditions for discharge of debt in bankruptcy
>
> A debt which is a loan insured under the authority of this subpart may be released by discharge in bankruptcy under any chapter of Title 11, only if such discharge is granted—
>
> (1) after the expiration of the seven-year period beginning on the first date when repayment of such loan is required, exclusive of any period after such date in which the obligation to pay installments on the loan is suspended,
>
> (2) upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable, and;
>
> (3) upon the condition that the Secretary shall not have waived the Secretary's rights to apply subsection (f) of this section to the borrower and the discharged debt.

■ As the court thusly holds in *Matthews v. Pineo*, 19 F.3d 121 (3rd Cir.), *cert. denied*, 513 U.S. 820, 115 S.Ct. 82, 130 L.Ed.2d 35 (1994), the § 294f(g) "unconscionable" requirement is extremely strict, even relative to the *Faish* test for undue hardship:

> In ordinary usage, the term "unconscionable" means "excessive, exorbitant," "lying outside the limits of what is reasonable or acceptable," "shockingly

unfair, harsh, or unjust," or "outrageous." Webster's Third New International Dictionary 2486 (19787). In the absence of contrary indications, we presume that Congress, in employing the term "unconscionable" in Section 254o(d)(3)(A), means to adopt this definition. *See Smith v. United States*, 508 U.S. 223, 228–30, 113 S.Ct. 2050, 2054, 124 L.Ed.2d 138 (1993); *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). We note that other bankruptcy courts—and, indeed, the bankruptcy court in this case—have adopted essentially the same definition. *See, e.g., In re Green*, 82 B.R. 955, 959 (Bankr.N.D.Ill.1988); *In re Quinn*, 102 B.R. 865, 867 (Bankr. M.D.Fla.1989).

*See also In re RBGSC Investment Corp.*, 242 B.R. 851, 858 (Bankr.E.D.Pa.2000), quoting *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 181 (3d Cir.1999) (reciting the substantial burdens of proving unconscionability generally).

■ It is therefore manifestly clear that, since the Debtor cannot meet the less strict standards necessary to obtain a discharge of her non-HEAL loans, she is incapable of establishing that her HEAL loans can be discharged under the extremely strict standards of 42 U.S.C. § 294f(g). *See, e.g., In re Zierden–Landmesser*, 214 B.R. 300 (Bankr.M.D.Pa.1997); *In re Gronski*, 65 B.R. 932, 935–36 (Bankr. E.D.Pa.1986); and *In re Hines*, 63 B.R. 731 (Bankr.D.S.D.1986).

> *3. No Violation of Equal Protection Arises from Considering the Income of a Spouse Who Is Not Filing for Bankruptcy When Determining Whether a Debtor's Student Loans Are Dischargeable.*

We hesitate in approaching the Debtor's equal protection arguments regarding the consideration of Wisdo's income in assessing the dischargeability of the Debtor's student loans, as no such claims, or anything like them, are pleaded in the Com-

plaint. However, since the Debtor did reference such claims at trial and her brief devotes considerable attention to them, we will address these arguments on their merits here.

In a variety of contexts, bankruptcy courts take into account the income of a debtor's non-filing spouse or co-habitant because it is necessary to evaluate a debtor's ability to repay her financial obligations, *e.g.*, in ascertaining a debtor;'s disposable income for purposes of 11 U.S.C. § 1325(b)(1)(B), *see In re Rothman*, 204 B.R. 143, 159–60 (Bankr.E.D.Pa.1996), and cases cited therein; and in making the determinations of a debtor's ability to pay a divorce property settlement obligation under 11 U.S.C. § 523(a)(15), *see In re Koons*, 206 B.R. 768, 773 (Bankr.E.D.Pa. 1997), and cases cited therein; and *In re Halper*, 213 B.R. 279, 284 (Bankr.D.N.J. 1997).

It is therefore not surprising that bankruptcy courts routinely consider a non-filing spouse's actual and potential income in determining whether repaying student loans would impose an undue hardship on a debtor. In *In re Albert*, 25 B.R. 98 (Bankr.N.D.Ohio 1982), the court found that, since the debtor and his non-filing spouse probably commingled funds and expenses, it was necessary to consider the non-filing spouse's income in assessing the severity of his hardship. Likewise, other courts have required a debtor to repay student loans where a non-filing spouse failed to secure full-time or additional part-time employment to augment the household income. *See In re Koch*, 144 B.R. 959, 964–65 (Bankr.W.D.Pa.1992). Where one spouse deliberately gives up employment outside the home to devote his or her time exclusively to child care, courts have recognized a parent's desire to play an active role in the children's lives; however, they have held that this is a voluntary decision that the debtor, or non-filing spouse, could altered at any time the parent chooses to seek employment outside the home. *See In re Wilson*, 177 B.R. 246,

248–50 (Bankr.E.D.Va.1994). *See also In re Cabanel, Cabanel v. United States Dep't of Education*, Bankr.No. 98–34212, Adv. No. 99–0038 (Bankr.E.D.Pa. June 10, 1999) (debtor's discharge of student loan denied, at least partially on the basis of his wife's substantive income); and *In re Zibura*, 128 B.R. 129, 133–34 (Bankr.W.D.Pa.1991) (although the married debtors may choose to have two households, it would be inappropriate to cause the couple's creditors to bear the financial burden of such a decision).

Although the Debtor's brief urges us to hold that her right to equal protection would be violated by giving consideration to her husband's income, we note that an equal protection violation can prevail only upon a showing that a statute (1) burdens or targets a suspect class of individuals; or (2) has no rational relationship to any legitimate government end. *See Vacco v. Quill*, 521 U.S. 793, 799–800, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997); *Romer v. Evans*, 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996); and *Maldonado v. Houstoun*, 157 F.3d 179, 185 (3d Cir.1998). Married status is not a suspect classification. It is not irrational to consider the total picture of a debtor's entire family in making a § 523(a)(8) or § 294f(g) determination.

Further, we observe that there are many governmental subsidies available to married couples that single individuals are not eligible to receive. Thus, the converse of the Debtor's argument would be that all of these benefits are unconstitutional because they violate an *unmarried* individual's right to equal protection. It is only just that a spouse contribute to his or her partner's financial support. Indeed, many courts have held that the income of other relatives or of a live-in companion of a debtor is relevant. We can therefore find no logical reason why the husband's income in this instance is not equally as relevant as to whether requiring the Debtor to repay her student loans would impose an undue burden or rise to the level

of unconscionability. Strong policy argument for *including* spousal income in the student loan dischargeability equation is set forth in the following passage:

> Requiring non-debtor spouses to provide financial support to their debtor spouses is consistent with the view of marriage as a "covenant" and with the belief that married couples have a moral obligation to support each other both emotionally and economically. Such a policy in the context of bankruptcy would reinforce the societal goal of encouraging spouses, rather than creditors, to bear the primary responsibility of helping a partner in bankruptcy. The failure to adopt such a policy amounts, in effect, to a subsidy for the non-filing spouse, paid for by society and by creditors ...

M. Dickerson, *To Love, Honor and (Oh!) Pay: Should Spouses Be Forced to Pay Each Other's Debts?*, 78 BOSTON U.L. REV. 961, 1011 (1998).

■ Therefore, we reject the Debtor's argument that her Fourteenth Amendment right to equal protection of the law is violated when Wisdo's income is used to determine whether repaying her loans would amount to an undue hardship. We find that, when the entire income of the household of almost $60,000 is measured against the facts of the *Faish* debtor, the instant Debtor's ability to maintain a quite-comfortable standard of living, while paying off a substantial portion of her student loans, renders her incapable of meeting the first prong of the *Faish* test.

4. *The Debtor's Student Loan Dischargeability Raises No Viable Issues Regarding Violations of the Contracts Clause or the Ex Post Facto Clause of the United States Constitution.*

The United States Constitution, at Article I, clause 10, provides that "No State shall pass any law impairing the Obli-

gations of Contracts...." The Debtor's argument as to how this provision of the Constitution bears any relevance to the issues at hand can only be ascertained by quoting thusly from the Memorandum of Law in Support of Debtor's Discharge from Educational Loan on the Basis of Undue Hardship and Unconscionability ("the Debtor's Brief"), at unnumbered page 9:

> In the present non-HEAL loans, the obligee was the Great Western Savings of Northbridge, whose loans were secured by the State of California.... These loans were subject to the Federal PLUS loan at 20 U.S.C. 1071–1087–2 which were not prevented from discharge except as to undue hardship as of the date they were entered. Pub.L. 96–56, S 3(1) Amendments to 523(a)(8) went into effect subsequent to the loan dates. This Amendment inserted the language insured or guaranteed by a governmental unit ... for an educational loan....

■ The first difficulty with this argument is the unproven and inaccurate assumption that the amendments to § 523(a)(8) effected by P.L. 96–56 were enacted after the Debtor's student loans were made in 1985–89. In fact, this amendment was enacted in 1979. *See* 4 COLLIER ON BANKRUPTCY, ¶ 523.-LH[3][a], at 523–120 to 523–121 (15th ed. rev.1999); and NORTON BANKRUPTCY LAW & practice 2d, BANKRUPTCY CODE AND RELATED LEGISLATION LEGISLATIVE HISTORY EDITORIAL COMMENTARY 551 (1999–2000 ed.). The first of the Debtor's loan was made six years thereafter, in 1985.

■ Secondly, assuming *arguendo* that the Debtor had made reference to an amendment to the relevant legislation which occurred after her loans were made, as the USA and ECMC both point out, citing the decision of Judge Raslavich of this court in *In re Feuer*, 195 B.R. 866, 869 (Bankr.E.D.Pa.1996),[1] the Contract Clause

---

1. In *Feuer* the debtor argued that provisions of § 294f(g) extending the period which must

prohibits only state enactments which impose contracts, not federal enactments such as 11 U.S.C. § 523(a)(8) and 42 U.S.C. § 294f(g). The Debtor's only responses in its brief, filed on July 28, 2000, with the Defendants' briefs, submitted on or before July 14, 2000, in hand, is a vague contention that the Contract Clause applies because the State of California is invoking the federal law at issue, which allegation itself has no basis in the record. Again, moreover, the significant factor for Contracts Clause purposes is whether a state enacted the challenged legislation, not whether a state invoked law enacted by the federal government.

The relevance of the Ex Post Facto Clause, providing, at Article I, section 9, clause 3 of the Constitution that "[n]o ... ex post facto law shall be passed," is equally as obscure as the Debtor's invocation of the Contracts Clause. The threshold issue is determining what law the Debtor claims was enacted which allegedly impermissibly being applied retroactively against her. The reference again appears to be P.L. 96–56, which rendered insured or guaranteed loans subject to § 523(a)(8). If so, for the reasons stated at page 680 *supra*, the premise of a retroactive application of that aspect of § 523(a)(8) is incorrect.

 In making this argument, the Debtor is not confronted with the issue that a state is not the governmental entity that enacted the legislation at issue, which eliminated application of the Contracts Clause. The Ex Post Facto Clause applies to enactments of Congress. However, the Debtor *is* confronted with the principle that the Ex Post Facto Clause only applies to criminal or penal laws. *See, e.g., Weaver v. Graham*, 450 U.S. 24, 28–30, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). The Debtor

expire from the due date of the loan to the filing of the bankruptcy at issue from five years to seven years to have a HEAL loan discharged violated the Contracts Clause. 195 B.R. at 869. We note that, subsequent to the Debtor's student loan, former § 523(a)(8)(A), which allowed non-HEAL loans over seven years old to be discharged,

attempts to overcome this argument with the following statements in the Debtor's Brief, at unnumbered page 16, which concludes her arguments on this issue:

Consider, for a moment, the language adopted by the Courts under the *Brunner* test for unconscionability. It is no longer enough that a debtor be bankrupt, the debtor must be "unconscionably" bankrupt or be in undue hardship, not just financial hardship that causes bankruptcy. There is no remedial purpose (i.e. sending the shopper nude) served by these additional, shockingly unfair requirements except to deter those who might seek relief and to punish those who are less than "outrageously" distressed. That it works punishment cannot be questioned. This much is recognized by almost every bankruptcy judge who has considered the issue. The legislation is at direct odds with the purposes sought by the entire bankruptcy code. Thus, the later amendments to 523(a)(8) that enlarged the remedies of the State of California and Great Western Bank which post-date the 1989 loans to Francine Greco could not have been under contemplation at the time she entered the loan agreements and are ex-post-facto impositions on loans that had no such requirements when she entered the contracts.

In this passage, the Debtor seems to be saying that the Congressional standards for discharge of student loans, as interpreted by controlling authorities in this Circuit, are so unfair as to be punitive.

In making such an argument, the Debtor appears to assume that she has a property right to a "non-punitive" bankruptcy discharge of her student loans. However, as the *Feuer* makes clear, 195 B.R. at 870,

was repealed. However, no claims relating to these changes in the law, which did occur subsequent to her loans, are made by the Debtor. If they were, it should be recalled that the Contract Clause was nevertheless held inapplicable in *Feuer*, and would be inapplicable here, because the claims did not arise from statutory enactment by a state.

a bankruptcy discharge is unlike a contractual term that may be negotiated, such as the interest rate or principal amount. *Id.* Rather, it is a statutory privilege, and thus there is no right to a bankruptcy discharge. *Id.*, citing *Stellwagen v. Clum*, 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507 (1918). Therefore, it is inappropriate to maintain that denial of a discharge of any sort of debt, including student loans, is punitive or violates any rights of a debtor.

We therefore have no hesitancy in finding that these arguments lack merit. They are therefore unable to overcome the absence of merit of the Debtor's defense to nondischargeability of these student loans.

## D. CONCLUSION

An order declaring all of the Debtor's student loan debts nondischargeable will be entered. We will, however, dismiss the Defendant's counterclaims seeking to have this court liquidate these nondischargeable obligations. *See In re Clayton*, 195 B.R. 342, 345–46 (Bankr.E.D.Pa.1996); *In re Shapiro*, 188 B.R. 140, 149 (Bankr.E.D.Pa. 1995); *In re Brookman, Brookman v. Sallie Mae*, Bankr No. 97–13247DAS, Adv. No. 97–0770, slip op. at 3 (Bankr.E.D.Pa. Oct. 15, 1997); *In re Andrews, Andrews v. PHEAA*, Bankr.No. 93–16707DAS, Adv. 94–0021, slip op. at 3 (Bankr.E.D.Pa. March 16, 1994); and *In re Stelweck*, 86 B.R. 833, 844–45 (Bankr.E.D.Pa.1988), *aff'd sub nom. United States v. Stelweck*, 108 B.R. 488 (E.D.Pa.1989).