In re Gloria DOWNEY, Debtor.

Gloria Downey, Plaintiff,

v.

Sallie Mae, Inc; Hemar Insurance Company of America; and Educational Credit Management Corporation, Defendants.

Bankruptcy No. 99–00542–GVL1.
Adversary No. 00–90003.

United States Bankruptcy Court,
N.D. Florida,
Gainesville Division.

Aug. 24, 2000.

Mr. James Cerveny, Gainesville, FL, for debtor/plaintiff.

Ronald A. Mowrey, Tallahassee, FL, for Hemar Insurance Co.

Sallie Mae, Inc., Wilkes-Barre, PA, pro se.

Karen K. Specie, Gainesville, FL, Trustee.

### MEMORANDUM OPINION

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER came before the Court for a trial on the Plaintiff's complaint seek-

ing to discharge student loans. This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(b)(2)(I), and 1334. The Court reviewed the pleadings, and heard testimony and argument from the parties. For the reasons more fully outlined below, the student loan debt that was the subject of the controversy is held to be non-dischargeable under 11 U.S.C. § 523(a)(8). The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052.

## I. Factual Summary

Plaintiff is a 29 year old resident of South Florida. She achieved an Associate in Arts degree from Broward Community College, and graduated from the University of Florida with a Bachelor of Arts degree in 1993. Her undergraduate course of education was somewhat delayed by the onset of a seizure disorder, which has subsequently resolved. She testified that in 1992, at the height of the seizure disorder, it was necessary for her to live with her mother in Miami–Dade county, due to the combination of headaches and side-effects from the anti-convulsive medications. Plaintiff delayed completion of her undergraduate studies for a while. As her health improved, she found interim employment as a longshoreman, and was eventually able to earn her baccalaureate degree. She chose to continue her education in South Florida, and graduated with a Juris Doctor degree from the University of Miami School of Law in 1996.

Plaintiff has held several positions as an attorney following graduation and passage of the Florida Bar examination. Her first job as an assistant Marion county attorney came in 1996 with a starting salary of $26,500.00. She left the county government in 1998 with a salary of $30,500.00. Her next job was a 1998–1999 stint with a private firm in Gainesville that focused on immigration law. This employment netted a salary of $35,000.00, but the firm downsized, and she left North Florida to return home to South Florida.

Plaintiff testified that her current employment with the public defender's office pays $32,500.00, or $1350.00 gross every two weeks.[1] The position does not include medical benefits, or deductions for taxes. Plaintiff must set aside funds for health care and taxes to meet these obligations.[2] She testified that she currently resides in a travel trailer, without kitchen, bathroom or laundry facilities, on her mother's property; she procures the missing amenities at her mother's house. She attested to monthly expenses of $1300.00 – $1400.00 before student loan obligations. The monthly expenses include a voluntary rent payment to her mother of $500.00, utilities of $150.00, telephone of $50.00, groceries of $300.00, outside meals (lunches) of $100.00, and transportation expenses that range between $200.00–$300.00. She stated that she does not own an automobile, but shares rides and uses public transportation. She neither personally testified nor proffered expert testimony as to current medical conditions and expenses, but asserted that her recent bouts with ulcerative colitis were stress induced.

1. Plaintiff's testimony as to her paycheck amounts, pay periods, and gross income does not balance. If she is receiving bi-weekly paychecks of $1350.00, her average gross monthly income is $2925.00 and her yearly gross income is $35,100.00. If she is receiving $1350.00 semi-monthly, her gross monthly income is $2700.00 and her gross annual salary is $32,400.00.

2. According to the formulae contained at website *http://www.fountainstreet.com/tax-calc.htm*, absent payroll tax withholding, at $1350.00 bi-weekly ($35,100.00 annually), a single person with no dependents taking the standard deduction should set aside approximately $406.75 per month to meet their federal income tax obligation. At the 7.65% effective rate for salaried persons, $223.76 per month would fund the social security contribution. At $1350.00 semi-monthly ($32,400.00 annually), that person should set aside approximately $343.75 per month to meet their federal income tax obligation, and $206.55 per month to fund their social security contribution.

Plaintiff financed her education through student loans totaling $110,054.71. Hemar insured a portion of the loans that totaled $55,554.71. They settled with Plaintiff before trial for $20,000.00, an amount which the parties agreed was non-dischargeable in bankruptcy. The balance of the loans totaling $54,500.00[3] was consolidated by Sallie Mae, acquired by Great Lakes Higher Education Corporation, assigned to Educational Credit Management Corporation (ECMC), and then guaranteed by the Florida Department of Education.

Plaintiff testified that her current monthly student loan obligation is approximately $941.00. With a salary of $32,500.00, less amounts retained for taxes and the monthly living expenses, she testified to disposable income (before payment of the student loans) of approximately $800.00 per month, although a calculation using the amounts testified to shows disposable income of $749.70 per month. During a period of unemployment between her position in private practice and her current job, Plaintiff was able to obtain a temporary forbearance on a portion of her student loans, and extended the payment schedule on other obligations. It is unclear whether all of her refinancing options have been exhausted. Plaintiff was current on her Sallie Mae obligations at the time she filed for bankruptcy.

## II. Discussion

Plaintiff sought to elude the exception to student loan discharges under § 523(a)(8) of the Bankruptcy Code by asserting undue hardship. She pointed not only to her current salary and living conditions, but argued that because her seizure disorder required her to reside close to her family, she was forced to chose the more expensive private law school in Miami over the less expensive public law schools upstate. Essentially, Plaintiff argued that the undue hardship occurred when she incurred greater educational loan charges at the

3. Interest accruing throughout the balance of the extended loan repayment schedule will

private institution than she would have assumed if she had gone to a public law school. Additionally, she suggested that her current income is an indicator of future income, and argued that payment of her school loans in full is an undue hardship that will continue for the foreseeable future.

### A. The Law of Undue Hardship as Applied to Educational Loans

A discharge in bankruptcy under § 727(a) of the Code discharges the debtor from all debts that arose before the date of the discharge. 11 U.S.C. § 727(b). Certain types of debt are excepted from discharge under § 523 of the Code. "A discharge under section 727 ... of this title does not discharge an individual debtor from any debt for an educational ... loan ... guaranteed by a governmental unit ... unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor...." 11 U.S.C. § 523(a)(8).

The Code does not define "undue hardship". Neither does the legislative history of section 523. The leading legal test used to determine whether a particular set of facts constitute undue hardship in the educational loan arena is set forth in *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2nd Cir.1987). This test requires the debtor to prove by a preponderance of the evidence that:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) that the debtor has made good faith efforts to repay the loans.

cause the total payments due Sallie Mae and its successors to exceed $130,000.00.

*Brunner* at 396. If the debtor proves all three prongs of the test, "undue hardship" exists, and the school loans are dischargeable. *Id.* The *Brunner* test was adopted by this Court in *Dennehy v. Sallie Mae, Rush University (In Re Dennehy)*, 201 B.R. 1008 (Bankr.N.D.Fla.1996).

## B. Analysis

■ The first prong of the test requires the debtor to establish that current repayment of the student loans would cause the debtor to live below the minimum standard of living. *Dennehy* at 1011. Debtor has not proven by a preponderance of the evidence that the payment of her Sallie Mae obligation to the current assignee would cause her to live below the minimum standard of living. There is room in Plaintiff's budget for economizing measures that would allow the repayment of her debt.

This Court finds that a voluntary payment to the Debtor's mother of $700.00 per month for residence in a travel trailer without facilities is excessive. The base rent alone is unreasonable for the amenities attested to, and no evidence was introduced to support the testimony as to utility and telephone charges. Plaintiff testified that the payments to her mother were not the result of a demand for payment, but rather a voluntary agreement to pay those amounts. There was no evidence that Plaintiff's living expenses could not be reduced to a more reasonable amount. Based upon Plaintiff's testimony, the current discrepancy between her net income and expenses is approximately $141.00 per month. Mathematically, the difference is $192.00 per month. Either way, Plaintiff's housing budget is a likely target for making up the difference. Absent evidence that Plaintiff cannot maintain a minimal standard of living if she repays her loans, her attempt to overcome the student loan exception to the dischargeability of the debt must be denied.

The first prong of the test "has been applied frequently as the minimum necessary to establish 'undue hardship.' " *Brun-ner* at 396. Inasmuch as Plaintiff has not met the minimum requirements for a showing of undue hardship, our analysis could stop here. However, evidence adduced at trial as to the second and third prongs of the test is worthy of analysis, in that it further shows the inability of Plaintiff to prove undue hardship in this matter.

■ The second prong of the *Brunner* test requires the debtor to show that the current state of her financial affairs is not likely to improve in the future. *Dennehy* at 1012 *citing to Brunner* at 396. Satisfying this part of the test requires a showing that this state of affairs is likely to persist for a significant portion of the repayment period. *Brunner* at 396. The test also requires "evidence not only of current inability to pay but also of additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time . . . ." *Id.*

■ In the instant matter, no evidence was presented that would suggest that Plaintiff's financial condition was unlikely to improve. On the contrary, Plaintiff has shown an ability to obtain employment that is likely to lead to increasing levels of responsibility and remuneration over time. Additionally, there was lack of evidence of additional, exceptional circumstances that would tend to displace Plaintiff's demonstrated ability to achieve greater levels of success as her career progresses in the future. While Plaintiff argued that the exceptional circumstances of her past led to the current inability to pay, the *Brunner* test seeks evidence of exceptional circumstances in the present that will lead to an inability to pay in the future. "The dischargeability of student loans should be based on the certainty of hopelessness, not simply a present inability to fulfil a financial commitment." *In Re Briscoe*, 16 B.R. 128, 131 (Bankr.S.D.N.Y.1981). Absent proof of additional, exceptional circumstances that would prevent Plaintiff's financial condition from improving in the future, she cannot carry the burden of the second prong of the *Brunner* test, and her

attempt to discharge her student loan debt must be denied.

 The third prong of the test focuses on whether the debtor has made a good faith effort to repay the student loan. *Dennehy* at 1012 citing to *Brunner* at 396, 397. "Good faith" is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses. *Matter of Roberson*, 999 F.2d 1132, 1136 (7th Cir.1993). In the instant matter, Plaintiff has demonstrated good faith in her efforts to secure employment. She testified that she continues to search the classifieds for higher paying positions. As she gains experience, her income is likely to improve. Thus, a case can be made for her good faith efforts to maximize her income. However, Plaintiff has not demonstrated good faith efforts at minimizing her expenses. Given that she was current on her Sallie Mae obligations until she filed her case under Chapter 7, Plaintiff has not satisfied the third prong of the *Brunner* test, and is not eligible for discharge of her student loans.

## III. Conclusion

The evidence does not show that Plaintiff lacks the current ability to repay her student loans while maintaining a minimal standard of living. On the contrary, the evidence suggests that a re-calibration of Plaintiff's current living expenses could yield enough additional capital to meet her obligations without any change in her living conditions. The evidence does not show additional exceptional circumstances suggestive of a continuing inability to pay. Instead, a logical inference can be drawn that the Plaintiff's financial condition will improve over time, as she benefits from the continued acquisition of professional skills. The circumstances of the past do not foreshadow any diminution of earning potential in the future. And, it is questionable whether Plaintiff is currently making good faith attempts to repay her loans.

In sum, Plaintiff failed to meet any of the three prongs of the *Brunner* test. As such, she has not established undue hardship, and cannot be granted a discharge from her student loan obligations.