**In re Lisa A. BLOCH, Debtor.**

**Lisa A. Bloch, Plaintiff,**

v.

**Windham Professionals, Suffolk University, Diversified Collection Services, American Student Assistance, Educational Credit Management Corporation, Defendants.**

**Bankruptcy No. 99–45233.
Adversary No. 99–4299.**

United States Bankruptcy Court,
D. Massachusetts.

Jan. 23, 2001.

---

Lisa A. Bloch, Seattle, WA, debtor pro se.

John White, Topkins & Bevans, Braintree, MA, for Educational Credit Management Corp.

## MEMORANDUM OF DECISION

JOEL B. ROSENTHAL, Bankruptcy Judge.

This matter comes before the Court on the complaint of Lisa A. Bloch, the Chapter 7 Debtor, to determine the dischargeability of certain student loan obligations incurred by the Debtor prior to filing her Chapter 7 petition. The Debtor seeks declaratory relief from this Court pursuant to 11 U.S.C. § 523(a)(8). On October 27, 2000, the Debtor and Educational Credit Management Corporation ("ECMC") tried the case, and I took the matter under advisement. After consideration of the testimony and the exhibits, for the reasons set forth herein, I find that, with the exception of her claims against four defendants,[1] Ms. Bloch did not meet her burden

---

1. The Debtor filed a voluntary Chapter 7 petition for relief on August 12, 1999. On October 29, 1999, the Debtor commenced this adversary proceeding seeking relief under 11 U.S.C. § 523(a)(8), and named as co-defendants Windham Professionals ("Windham"), American Student Assistance ("ASA"), Diversified Collection Services ("DCS"), and Suffolk University ("Suffolk"). On December 27, 1999 Educational Credit Management Corporation ("ECMC") moved to be added as a party defendant as assignee of five educational loan promissory notes made by the Debtor with ASA. The Court allowed that motion on January 14, 2000. On December 20, 1999 the Debtor filed proof of service of summons, as required by Rule 7004(a) of the Federal Rules of Bankruptcy Procedure and Rule 4(1) of the Federal Rules of Civil Procedure, on all the original co-defendants. Only ECMC has answered and appeared to defend. Therefore, pursuant to MLBR 7055–1 and Rule 55(b)(2) of the Federal Rules of Civil Procedure made applicable by Rule 7055 of the Federal Rules

of proving that repaying her student loans will cause her and her dependents "undue hardship" as required by § 523(a)(8) of the Bankruptcy Code.

## I. FINDINGS OF FACT

After review of the evidence presented at trial, the Court makes the following determinations of fact pursuant to Rule 52(a) of the Federal Rules of Civil Procedure and Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The Debtor is a 41 year-old woman with an extensive educational background. Since 1976 the Debtor has attended a number of prestigious universities and colleges including Radcliffe, Cornell, Harvard, and Princeton. Her graduate education, specifically a masters degree in public administration from Suffolk University, was financed through notes currently held by ECMC. Those notes are guaranteed through the Federal Stafford Student Loan program. Payment on the notes came due in 1995, and as of October 25, 2000 the debt totaled $41,863.23.

The Debtor, who has no dependents, resided in the Boston/Lowell, Massachusetts area from 1991 until January 2000. The Debtor's testimony, and other evidence presented, reveals that while she was in the Boston area she established a pattern of sporadic, full-time employment supplemented by part-time clerical assignments arranged by temporary employment agencies. This failure to sustain full-time employment is not due to a lack of skills or talent. The evidence at trial suggested that the Debtor has an impressive educational résumé, and an abundance of marketable skills, including a considerable computer background and some management experience. At the end of January 2000 the Debtor moved to Seattle, Washington without a job and incurred moving expenses of approximately $5,000.00. The Debtor's employment woes have continued in Seattle where she has failed to obtain permanent work. Her uncontroverted testimony revealed that the Debtor has survived for the last year by living with friends and paying expenses by accepting a gratuitous $4,000.00 loan. The Debtor admits she has no physical or mental disabilities that would hinder her from working full-time, but for some unexplained reason, either a personality issue, or perhaps wanderlust, the Debtor has not been employed in any one full-time position for longer than a year since attaining her graduate degree in 1995.

The Debtor testified that she currently works less than forty (40) hours per week. Her average work week consists of less than 30 hours per week at a pay rate of $20.00 per hour.[2] The Debtor further testified that her net income was approximately $2,350.00 per month. The Court, however, believes this figure actually represents the Debtor's gross income, and takes into consideration the appropriate taxes and other deductions in determining her net income. The Debtor also testified she was reluctant to seek additional evening or weekend employment because it would impede her search for a permanent full-time position. The Debtor presented evidence showing her current monthly living expenses to be approximately $2,200.00. The Debtor conceded that liv-

---

of Bankruptcy Procedure, the Court enters judgment by default against Windham, ASA, DCS, and Suffolk. MLBR 7055–1; Fed. R.Bankr.P. 7055; Fed.R.Civ.P. 55(b)(2). Furthermore, in its answer to the Debtor's complaint, ECMC filed counterclaims seeking judgment against the Debtor in the amount of its claims, as well as for attorneys' fees and costs. This Court exercises its discretion to abstain from deciding the Defendant's counterclaims pursuant to 28 U.S.C. § 1334(c)(1).

See Cox v. Cox (In re Cox), 247 B.R. 556, 569–70 (Bankr.D.Mass.2000).

**2.** The Debtor testified that her current $20.00 an hour position is temporary. Evidence presented suggests that when this position ends the normal base pay rate for temporary help in Seattle is $10.00–$14.00 per hour. Based on the number of hours the Debtor currently works, this would result in monthly gross income of between $1,180.00–$1,652.00.

ing in Seattle is in and of itself expensive, and given the expensive rental cost for the Debtor's residence, the Court agrees. Notwithstanding the Debtor's expensive rent, the Court finds that the Debtor's remaining living expenses are otherwise modest.

Finally, the Court notes that at trial the Debtor expressed optimism about an improvement in her job prospects, a desire to repay her outstanding loans, and acknowledged that she only brought this action as a result of her frustration in dealing with the various student loan agencies.

## II.  DISCUSSION

The Debtor contends she is entitled to relief from § 523(a)(8) which excepts from discharge student loans.  Section 523(a)(8) of the Bankruptcy Code states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit, overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8).

■ In a § 523(a)(8) action the creditor bears the initial burden of proving the debt exists and that the debt is of the type excepted from discharge under § 523(a)(8). *See Koch v. Pennsylvania Higher Educ. Assistance Agency, et al. (In re Koch),* 144 B.R. 959, 963 (Bankr.W.D.Pa.1992).  Once the creditor makes this threshold showing, the burden shifts to the debtor to prove that excepting the student loan debt from discharge will cause the debtor and her dependant's "undue hardship."  *See Led-*

*better v. United States Dept. of Educ. (In re Ledbetter),* 254 B.R. 714, 716 (Bankr. S.D.Ohio 2000).  In this case the Debtor stipulated to the existence of a debt owed to ECMC, and furthermore that the debt falls within one of the exceptions stated in § 523(a)(8).  Thus, the only issue remaining for this Court to decide is whether the Debtor has met her burden of proving that excepting her student loan obligations from discharge will cause her "undue hardship."

■ This Court has adopted the "totality of the circumstances" test articulated recently by Judge Haines in *Kopf v. United States Dept. of Educ. (In re Kopf),* 245 B.R. 731, 739 (Bankr.D.Me.2000).  *Dolan v. American Student Assistance, et al. (In re Dolan),* 256 B.R. 230, 238 (Bankr. D.Mass.2000).  In *Dolan* this Court stated that a debtor seeking discharge of student loans under § 523(a)(8) "must prove by a preponderance of the evidence, that (1) his past, present, and reasonably reliable future financial resources;  (2) his and his dependents' reasonably necessary living expenses, and;  (3) other relevant facts or circumstances particular to the [d]ebtor's case are such that excepting the student loans from discharge will prevent the [d]ebtor from maintaining a minimal standard of living, even with the advantage of a discharge of his other pre-petition debts."  *Dolan,* 256 B.R. at 238.  By making specific findings as to each of these matters, the Court must then determine if excepting a debtor's student loans from discharge will impose an "undue hardship" on that debtor and the debtor's dependents.  Having stated the applicable analysis for "undue hardship" in this Court, I now turn to this Debtor's request for relief.

### A.  The Debtor's Past, Present and Reasonably Reliable Future Financial Resources

While it may be true the Debtor's past and present income are insufficient to pay her student loans and still maintain a mini-

mal standard of living, the Debtor has nonetheless not proven to the Court's satisfaction that her prospects for increasing her future income are so bleak as to warrant a discharge of her student loans. *In re Greco*, 251 B.R. 670, 675 (Bankr.E.D.Pa. 2000). The Debtor currently makes $2,350.00 per month, and the Debtor's current living expenses suggest her past and present income have not been enough to service her student loans. The Court believes, though, that the Debtor could significantly enhance her future income by exploiting her educational credentials and the job skills she has acquired in past employment. *Id.* at 677. Although highly educated, the Debtor's résumé and testimony indicate a *presently* unstable and uninspiring employment history, but the Court is convinced this will change, particularly in light of the favorable economic conditions present in Boston and Seattle, as well as the Debtor's portable credentials and job skills. *Id.* at 676.

Furthermore, the Court believes the Debtor could do more to maximize her income by increasing the length of her work week. *Id.* at 677. The Debtor admitted she works an average of only 29.5 hours per week. The Debtor has failed to show that this is reasonable given her economic circumstances and abilities. *Id.* at 676. A 29.5 hour work week is a personal choice she has made and is not linked to any physical or mental disability, nor is it motivated by a need to care for any dependents. The Debtor stated her unwillingness to take part-time evening or weekend work because she says this would interfere with her job search. The Court finds this explanation unconvincing. It is not at all unreasonable to expect this Debtor to supplement her income by taking part-time weekend or evening work in order to meet her student loan obligations. *In re Wegrzyniak*, 241 B.R. 689, 694 (Bankr.D.Idaho 1999). An increase in the Debtor's work hours, either at a part-time job or at her present temporary position, would raise her monthly income, possibly allowing her to make some effort at repay-

ment of her student loans. The Debtor's strong educational background, coupled with her transferable skills and talents should assist her in her search for employment. Based on her education, and her articulate *pro se* presentation in this adversary proceeding, the Court is confident that the Debtor will bounce back by finding employment commensurate with her education. Therefore, the Court concludes the Debtor's past, present, and reasonably reliable future financial resources will allow her to pay her student loan obligations and still maintain a minimal standard of living.

**B.  The Debtor's Reasonably Necessary Living Expenses**

In addition to the Court's conclusion that the Debtor's future income prospects will allow her to repay her student loans without undue hardship, the Court likewise finds the Debtor has not done all she can to minimize her reasonably necessary living expenses, and as such the Court denies her the relief requested. *In re Downey*, 255 B.R. 72, 75 (Bankr.N.D.Fla.2000). The Court's review of the Debtor's living expenses leads to the conclusion that her living expenses are, for the most part, modest. The Debtor could however reduce her substantial rent expense in some manner with a resultant monthly savings of perhaps hundreds of dollars. *Id.* at 75. For example, the Debtor could reduce her rent expense by taking a more affordable apartment, or perhaps by taking in a roommate in her present home. Either of these options would help ease her present financial burdens. Thus, the Court finds the Debtor has not done all she can to minimize her reasonably necessary living expenses such that she is entitled to a discharge of her student loans for "undue hardship" under § 523(a)(8). *Id.* at 75.

**C.  The Debtor's Other Relevant Facts or Circumstances**

While the Court has already concluded the Debtor has not taken steps to maximize her current income and minimize her

expenses, the Court also looks to see if there are facts or circumstances unique to the Debtor's case that warrant granting a discharge of her student loans, notwithstanding the Court's conclusions above. In this case, the Debtor has failed to present evidence of any facts or circumstances that would lead this Court to conclude that excepting her student loans from discharge would impose an undue hardship. On the contrary, the Debtor's facts and circumstances militate *against* granting a discharge. For example, the Debtor has no dependents that might place a burden upon her monthly income or expenses. *In re Borrero*, 208 B.R. 792, 795 (Bankr. D.Conn.1997). Also, the Debtor is fortunately not burdened with any handicap or disability that precludes her from any of the vocational fields the Debtor is qualified to enter. *Id.* at 795. Additionally, the Debtor has continually professed a willingness to repay her outstanding student loans, and but for the purported inflexibility of the lenders' policies would enter into a payment arrangement to meet those obligations. As the Court can find no compelling reason to grant this Debtor a discharge of her student loans, the Court must find for ECMC, and leave the prevailing party with the suggestion that it work with this Debtor to reach a transitional agreement until the Debtor's employment situation changes.

### III. CONCLUSION

For the reasons set forth herein, the Court will enter default judgment against Defendants Windham Professionals, American Student Assistance, Diversified Collection Services, and Suffolk University. The Debtor's obligations to those Defendants, if any, are discharged by this Court's Order of Discharge dated March 29, 2000.

As to the Debtor's student loans owed to Defendant ECMC, the Court will enter judgment for the Defendant and finds those student loan debts to be nondischargeable. The Court abstains from deciding the counter-claims asserted by ECMC against the Debtor.

An Order in conformance herewith shall enter.