**In re Robert P. DOLAN, Debtor.**

**Robert P. Dolan, Plaintiff,**

**v.**

**American Student Assistance, TERI, Mellon Bank, N.A., Western New England College, and Educational Credit Management Corporation, Defendants.**

**Bankruptcy No. 99–44443.
Adversary No. 99–4287.**

United States Bankruptcy Court,
D. Massachusetts.

Dec. 12, 2000.

Peter Stern, Springfield, MA, for Robert P. Dolan.

John White, Topkins & Bevans, Braintree, MA, for Educational Credit Management Corp.

Neil D. Warrenbrand, Fitzpatrick & Warrenbrand, Boston, MA, for TERI and PHEAA.

## DECISION AND ORDER

JOEL B. ROSENTHAL, Bankruptcy Judge.

This matter comes before the Court on the complaint of Robert P. Dolan, the debtor in this Chapter 7 case, to determine the dischargeability of certain student loan obligations incurred by Mr. Dolan prior to filing his Chapter 7 petition. Mr. Dolan seeks declaratory relief from this Court pursuant to 11 U.S.C. § 523(a)(8). On September 19, 2000, the parties tried the case to the Court, and I took the matter under advisement. After careful consider-

ation of the testimony given and the exhibits offered, for the reasons set forth herein, I find that, with the exception of his claims against two defendants, Mr. Dolan did not meet his burden of proving that repaying his student loans will cause him and his dependents undue hardship as required by § 523(a)(8) of the Bankruptcy Code.

## I. PROCEDURAL HISTORY

The docket in this case reflects the following events. On July 2, 1999, Robert Dolan ("the Debtor") filed a petition for relief under Chapter 7 of the Bankruptcy Code ("the Code"). As required by § 341 of the Code, the Chapter 7 Trustee convened the meeting of the creditors in the Debtor's case, and the Debtor was available for examination by the creditors and the Chapter 7 Trustee. The Chapter 7 Trustee filed the Trustee's Report of No Distribution on August 31, 1999. The Debtor filed with the Court on October 14, 1999 the complaint under 11 U.S.C. § 523(a)(8), giving rise to the case *sub judice*. The Debtor's complaint named as co-defendants American Student Assistance ("ASA"), The Education Resources Institute, Inc. ("TERI"), Mellon Bank, N.A. ("Mellon"), and Western New England College ("WNEC"). Pursuant to orders of the Honorable Henry J. Boroff of this Court, the Pennsylvania Higher Education Assistance Agency ("PHEAA") was allowed to intervene as guarantor of loans made by Mellon, and Educational Credit Management Corporation ("ECMC") was added as a defendant as assignee of notes held by ASA.[1]

TERI, PHEAA, and ECMC timely answered the Debtor's complaint.[2] The rec-

---

1. On January 19, 2000, Judge Boroff recused himself from this adversary proceeding, and the case was reassigned to the Honorable James Queenan. During the pendency of this adversary proceeding, Judge Queenan retired from the Court after fourteen years of distinguished service. I inherited this case when I succeeded Judge Queenan on August 10, 2000.

2. In their respective answers to the Debtor's complaint, Defendants ECMC and TERI filed counterclaims seeking judgment against the Debtor in the amounts of their claims. ECMC also sought attorneys' fees and costs.

ord does not show, though, that ASA or WNEC answered the Debtor's complaint or otherwise appeared to defend the action, thus the only remaining defendants are TERI, PHEAA, and ECMC (collectively, "the Defendants").[3]

The Court issued an Order on January 31, 2000 discharging the Debtor under § 727 of the Code. The outcome of this adversary proceeding decides the applicability of that discharge to the Defendants' claims.

## II. JURISDICTION AND VENUE

This Court has jurisdiction to enter judgment on the Debtor's claim pursuant to 28 U.S.C. §§ 1334(b) and 157(b). The Debtor's action against the Defendants is a core proceeding. 28 U.S.C. § 157(b)(2)(I). Venue is proper pursuant to 28 U.S.C. § 1409(a).

## III. FINDINGS OF FACT

The Court heard trial of this case on September 19, 2000. All parties offered exhibits into evidence, and only the Debtor testified. As required by Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure, the Court makes the following findings of fact based on the evidence presented and the reasonable inferences drawn therefrom.

The Debtor is a forty-six year old attorney admitted to the Massachusetts bar in 1991. He was recently married and has two step children. Prior to becoming an attorney, the Debtor received various student loans to finance his law school education. The Debtor did not start law school until later in life, apparently in anticipation of assuming his mother's law practice in Turner's Falls, Massachusetts. For unknown reasons, the Debtor's mother closed her law practice prior to the Debtor completing law school. After being admitted to the practice of law in Massachusetts, the Debtor attempted to resurrect his mother's prior practice, albeit with limited success. Eventually, the Debtor built a practice by accepting bar advocacy appointments representing endangered children. The evidence at trial suggests this work makes up approximately 85% of the Debtor's practice.

Evidence presented demonstrated the Debtor's monthly income from his law practice, after deduction of operating expenses, is approximately $2,250.00 per month. Additionally, the Debtor's income deduction for his current practice of operating his business out of his home, in addition to other non-recurring legal and

This Court, though, exercises its discretion to abstain from deciding the Defendants' counterclaims pursuant to 28 U.S.C. § 1334(c)(1) because the Defendants merely seek to reduce their claims to judgment and further to enforce the terms of those notes under state law. In light of the fact that this Court today decides in favor of the Defendants and declares the Debtor's obligations under those notes non-dischargeable, I find there is no reason to commit the limited resources of this Court to deciding those issues. This Court's determination of the pedestrian issues raised by the Defendants' state law contract claims, for which the parties may well have jury trial rights, does nothing to aid the administration of this Debtor's bankruptcy estate. *See Cox v. Cox (In re Cox)*, 247 B.R. 556, 569–70 (Bankr. D.Mass.2000). Therefore, since my judgment today alleviates the Defendants of the burden of overcoming an affirmative defense of a bankruptcy discharge, the Court leaves the Defendants to their state law remedies in the appropriate state court forum.

3. On November 4, 1999, pursuant Rule 7004(a) of the Federal Rules of Bankruptcy Procedure and Rule 4(*l*) of the Federal Rules of Civil Procedure, Debtor's counsel filed proof of service of summons showing service on both ASA and WNEC by certified mail, with return receipt signed by a representative of the respective parties. As stated above, neither ASA or WNEC has answered the complaint or appeared to defend. Accordingly, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure as applicable by MLBR 7055–1, the Court will enter judgment by default against ASA and WNEC and grant the Debtor the relief requested in his complaint as to these parties. Fed.R.Civ.P. 55(a); *see Jackson v. Beech*, 636 F.2d 831, 835 (D.C.Cir.1980); *McMahan v. CCC Express Corp.*, 153 F.R.D. 633, 634 (N.D.Ind.1994).

professional expenses the Debtor claimed, result in additional income to the Debtor of approximately $5,000.00 annually, or approximately $400.00 per month. Based on the Debtor's testimony, corroborated by documentary evidence presented, the Court finds that, at present, a reasonable estimate of the Debtor's monthly income, exclusive of his spouse, is $2,650.00 per month.[4]

Though the parties contest the relevance of the Debtor's spouse's income, the Court nevertheless, for reasons discussed herein, endeavors to make findings on this issue. The Debtor testified that his spouse's gross annual income is "around $35,000.00 a year." Tr. at 36. The Debtor further testified that his wife's net monthly income is approximately $2,500.00. Tr. at 53. As ECMC's defense attorney elicited this information on cross-examination, and it is not refuted by other evidence in the record, the Court credits the Debtor's testimony on this issue. As such, the Court finds the combined income of the Debtor and Debtor's spouse to be $5,150.00 per month.

The Debtor's Schedule J shows the Debtor's monthly living expenses to be $1,457.00. Pl.'s Ex. 2. Not surprisingly, the Debtor's Projected Monthly Budget is in agreement. Pl.'s Ex. 3. The Debtor testified that he and his spouse split monthly living expenses, with the exception of expenses for the support of his step-children which his wife bears alone. The Debtor's representation of his family's household expenses was $2,400.00 per month. Tr. at 35, 52. However, the Debtor's own exhibits, even allowing for food and other costs paid solely by the Debtor's wife, show actual costs to be approximately $3,280.00 per month. In addition, the Debtor entered into an installment agreement with the Internal Revenue Service to amortize delinquent tax debt at the rate of $300.00 per month. Pl.'s Ex. 3; Tr. at 30. The Debtor also included payments for estimated income taxes to the Internal Revenue Service and the Massachusetts Department of Revenue in his Projected Monthly Budget. Pl.'s Ex. 3. The Court does not consider these payments in determining the Debtor's household expenses, as they are presumably paid before the Debtor takes net proceeds from his law practice. In light of the above, the Court finds the Debtor's total household expenses, inclusive of delinquent tax obligations and exclusive of support expenses for his step-children, to be $3,580.00 per month. As a result, the Court finds the Debtor's and the Debtor's spouse's monthly income and expenses result in an average monthly surplus of approximately $1,670.00. The Court finds the amount of this surplus that is attributable to the Debtor's income is $560.00 per month.

The Defendants raised issues at trial about the value of property the Debtor may acquire in the future. Defendants elicited testimony proving the Debtor has a contingent interest in a trust established by his mother ("the Trust"). The Debtor also stated he might receive property under his mother's will ("the Will"). Neither party presented evidence demonstrating with any certainty if or what property the Debtor might receive under either instrument. As such, the Court finds the Debtor possesses only a contingent future interest in the Trust and only an expectancy interest in any property to be distributed under the Will.[5]

---

4. The Defendants challenged the Debtor's income deduction for his automobile, which the Debtor admitted driving for personal use. Depreciation, though not a cash item, must be allowed to the Debtor under the assumption that a business automobile and business equipment have limited useful lives. Thus, the Court finds the Debtor's deduction for his automobile is not unreasonable.

5. The Defendants also made much of an alleged ownership interest held by the Debtor in the residence where he and his family reside. The Debtor testified he contributed $2,000.00 toward the purchase of the home shortly before he married his wife. The Debtor further testified, and documentary evidence corroborated his testimony, that he pays one-half of the monthly mortgage pay-

On the issue of the Debtor's current income, the Debtor gave several explanations for his modest earnings, not the least of which was that he suffers from depression. On both direct and cross-examination, the Debtor testified, without objection, that he experiences depression and maintained that his depression pre-dated his legal career. The Debtor further testified that he was regularly medicated in treatment of his condition. The Debtor stated that his primary care physician, who is not a mental health professional, diagnosed the Debtor's condition. The Debtor further stated that his depression is "not ... severe [and] not completely debilitating" and that his only manifestation from this depression is physical exhaustion. Tr. at 17, 69–70. Notwithstanding the lack of expert testimony or documentary evidence about the Debtor's condition, the Court accepts the Debtor's testimony on this point as fact.

Lastly, the Court addresses the remaining unpaid student loans. Before embarking on that inquiry, though, the Court is satisfied, and therefore finds, that the Debtor presented sufficient unrefuted evidence at trial to prove that he has, over the years, made serious and meaningful efforts to repay his student loan obligations. Despite these efforts, though, some of the Debtor's student loans remain unpaid, and it is to the Defendants' claims that the Court now turns.

In the Debtor's complaint, he alleges a debt to WNEC in the amount of $3,000.00. No evidence in the trial record refutes this assertion, and, furthermore there is no evidence WNEC expected, or the Debtor agreed, WNEC would be paid interest on this alleged claim. The Court therefore finds the Debtor's total obligation to WNEC is $3,000.00.

The Debtor also alleged a debt to ASA in the amount of $103,988.00. ECMC claims an interest in this obligation as an assignee of ASA, but neither the pleadings nor evidence adduced at trial indicate the amount, if any, left owing to ASA. As the Court defaulted ASA in this action, though, and since judgment will enter for the Debtor on this alleged claim, *see supra*, p. 3 n. 3, the Court need not make findings on the amount of the ASA claim. However, ECMC presented documents, to which the Debtor stipulated, evincing an obligation to repay money loaned, with interest. Though the Court makes no findings on the present balance of the Debtor's consolidated note, ECMC claimed the Debtor owes $90,450.95 in total. Def.'s Ex. 1 (¶ 6, Aff. of Joel Schoenecker, Esquire).

The Debtor also alleged a $17,621.00 debt owed to TERI. In its answer, TERI claimed the total amount outstanding is $17,954.50. Again, the Court makes no findings in this declaratory action as to the exact amount the Debtor owes TERI.

Lastly, PHEAA presented evidence that the Debtor owed a total amount of $7,289.54 at the time of trial. Def.'s Ex. 2 (¶ 9, Aff. of Denise M. Holland). As the Debtor did not contest this at trial, the Court need not liquidate the claim to declare it non-dischargeable under § 523(a)(8). With these facts in hand, the Court undertakes the task of first determining the proper legal standards and then applying those standards to the above facts to decide the outcome of the Debtor's complaint.

## IV. LEGAL STANDARDS

The parties disagreed on several matters the Court considers preliminary, yet

ment. Nothing in evidence controverts the suggestion that the Debtor contributed to the equity in the property. Furthermore, no evidence suggests that the Debtor makes these monthly payments pursuant to any tenancy agreement. However, given that no party presented detailed evidence as to the total

number or amounts of payments the Debtor has made toward acquiring or paying debt associated with the property, I refrain from making factual findings regarding the Debtor's interest in the residence and will not consider it in the undue hardship analysis.

legally relevant to the Court's decision today. First, the parties disagree on whether the Court should consider the Debtor's spouse's income in its "undue hardship" analysis, Pl.'s Trial Br. at 6–7; ECMC Trial Br. at 11; TERI/PHEAA Post–Trial Br. at 7, n. 3, and whether the Court should consider property the Debtor might receive under the Trust or the Will. Second, the Debtor, TERI, and PHEAA ask the Court to consider granting partial discharge under § 523(a)(8).[6] Lastly, the Debtor and the Defendants urge different standards for the Court to apply to determine what constitutes "undue hardship" under § 523(a)(8). The Court addresses each of these issues in turn.

## A. RESOURCES AVAILABLE TO THE DEBTOR IN DETERMINING WHAT CONSTITUTES "UNDUE HARDSHIP" UNDER § 523(A)(8)

The Defendants urge the Court to consider both the Debtor's income and his non-debtor spouse's income, as well as property the Debtor might receive under the Trust or the Will. The Debtor adamantly opposes these assertions, arguing that his monetary arrangement with his spouse, and the fact that she supports her own children from another marriage, preclude the Court from considering his spouse's income in deciding whether excepting the Debtor's student loans from discharge will cause the Debtor "undue hardship." The Debtor further argues that his interests in the Trust or the Will, if any, should not be considered because of their uncertainty. The Court considers these arguments in light of the current state of the law in the Commonwealth and under the Bankruptcy Code.

■ It is by now well settled that § 523(a)(8) of the Code requires bankruptcy courts to consider the income of a non-debtor spouse when deciding whether, in the court's discretion, excepting a debtor's student loans from discharge will impose an "undue hardship" on the debtor. *See e.g., Greco v. Sallie Mae Servicing Corp. (In re Greco)*, 251 B.R. 670, 676–77 (Bankr. E.D.Pa.2000) (considering non-debtor spousal income in § 523(a)(8) analysis); *White v. United States Dept. of Educ., et al. (In re White)*, 243 B.R. 498, 509 & n. 9 (Bankr.N.D.Ala.1999) (citing a litany of bankruptcy court authority factoring non-debtor spousal income into "undue hardship" determinations); *Ipsen v. Higher Educ. Assistance Found. (In re Ipsen)*, 149 B.R. 583, 585 (Bankr.W.D.Mo.1992) (factoring economic assistance provided to debtor by non-debtor spouse in assessing "undue hardship").

In the face of a lofty wall of authority to the contrary, the Debtor relies on an unpublished 1996 case decided by the Honorable Joan N. Feeney[7] to suggest this Court has discretion whether to consider non-debtor spousal income, and further that bankruptcy courts should do so only where the non-debtor spouse is the sole source of household support. The Debtor, though, broadly misinterprets Judge Feeney's decision, notably to his advantage. The authority underlying Judge Feeney's opinion reveals neither the discretion the Debtor would have this Court exercise, nor

---

6. At the conclusion of trial, the Court invited all parties to file post-trial memoranda on this issue. ECMC filed such a memorandum, but it declined to address the issue posed by the Court, instead confining its memorandum to advocating a finding that the Debtor's obligations were fully non-dischargeable under 11 U.S.C. § 523(a)(8). As the Court finds the Debtor fell short of meeting his burden of proving undue hardship under the circumstances, the Court need not reach the issue of whether § 523(a)(8) authorizes bankruptcy courts to grant partial relief under that sec-

tion. That question remains for the Court's consideration at another time and under other circumstances.

7. The case the Debtor cited is an unpublished opinion in two adversary proceedings, AP # 95–1120 and # 95–1121, in the main case *In re Farrar*, Chapter 7 Case No. 93–11954–JNF. ECMC also attached this opinion to its trial brief, but all parties erroneously referred to the case as authority from the First Circuit Court of Appeals.

the limitation the Debtor advances. *Ipsen,* 149 B.R. at 585. Given the settled state of the law on this issue, I decline to part company with countless other Bankruptcy Judges to blaze a trail I would surely walk alone.

■■■ The Debtor further argues, more successfully, that he has no property interests under the Trust or the Will for the Court to consider. The Court can summarily dispense with the Defendants' arguments on these matters. Under Massachusetts law, it is true that, subject to statutory exceptions, Mass.Gen.Laws ch. 235, § 34, creditors may reach property interests in satisfaction of obligations owed to them. Mass.Gen.Laws ch. 235, §§ 29, 31; Mass.R.Civ.P. 4.1; Mass.R.Civ.P. 4.2. This is true even of intangible property not subject to attachment or execution. Mass. Gen.Laws ch. 214, § 3(6); *see Whiteside v. Merchants' Nat. Bank of Boston,* 284 Mass. 165, 187 N.E. 706, 709 (1933). Whether the property interest a creditor reaches has any real value, though, is another matter entirely. *See Digney v. Blanchard,* 229 Mass. 235, 118 N.E. 250, 251 (1918). Here, the Defendants failed to prove with any certainty what benefit the Trust will bestow on the Debtor. Therefore, the Court cannot reasonably consider this in deciding what assistance it will be to the Debtor in paying his student loans. Also, it is settled law in the Commonwealth that a mere expectancy interest in property is no present property interest at all. *See Williams v. Massa,* 431 Mass. 619, 728 N.E.2d 932, 941 (2000) (observing future inheritance expectancies do not constitute property interests); *Labonte v. Giordano,* 426 Mass. 319, 687 N.E.2d 1253, 1255 (1997) (recognizing expectation of realizing possession of property devised by will does not arise until death of donor).

Based on these foregoing conclusions, the Court will consider the Debtor's non-debtor spouse's income in its "undue hardship" analysis. The Court will not, though, take into account any interests the Debtor may have under the Trust, nor will it consider the Debtor's expectancy interest under the Will.[8]

**B. THE STANDARD FOR "UNDUE HARDSHIP" UNDER § 523(A)(8)**

Section 523(a)(8) of the Code states, in relevant part, that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, ... unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependants.

11 U.S.C. § 523(a)(8). Thus, under the terms of the statute, a debtor's discharge does not discharge a student loan that comes within the terms of § 523(a)(8) unless excepting that debt from discharge will cause the debtor and the debtor's family "undue hardship." Other courts have frequently pointed out that Congress, despite articulating a standard for excepting student loans from the discharge exception, did not define or otherwise guide the courts on what constitutes "undue hardship." *See e.g., Great Lakes Higher Educ. Corp., et al. v. Brown (In re Brown),* 239 B.R. 204, 207 (Bankr.S.D.Cal.1999). Consequently, courts have been left to fashion

---

**8.** The Court points out that such property may be considered under other circumstances. For example, there may be instances when the amount of a debtor's beneficial interest has been proven with specificity, or that the interest is more likely to vest at a time more certain. Also, it may be appropriate to take property devised to or inherited by the debtor into account when it appears from the evidence that the debtor will certainly take some property by devise or inheritance, or that the debtor will take by operation of law. Thus, given other facts, the Court may have adopted a different approach.

their own tests to determine what is and what is not "undue hardship."

■ The First Circuit has not yet adopted or articulated a particular standard, but three tests have emerged that bankruptcy courts often employ in deciding what constitutes "undue hardship." These tests are: (1) the test articulated in *Pennsylvania Higher Educ. Assistance Agency v. Johnson (In re Johnson)*, 5 B.C.D. 532 (Bankr.E.D.Pa.1979); (2) the test announced in *Brunner v. New York Higher Educ. Services Corp. (In re Brunner)*, 46 B.R. 752 (S.D.N.Y.1985), and; (3) the "totality of the circumstances" test followed by many bankruptcy courts. *See Kopf v. United States Dept. of Educ. (In re Kopf)*, 245 B.R. 731 (Bankr.D.Me.2000). Judge Haines of the United States Bankruptcy Court for the District of Maine recently undertook an extensive analysis of the merits of these tests. *Kopf*, 245 B.R. 731, 737–41. In light of Judge Haines' comprehensive survey of the various "undue hardship" tests, I will not replicate his thorough analysis of these tests. Suffice it to say that, primarily because of the pragmatism it exudes and the flexibility it allows in the myriad circumstances of debtors before bankruptcy courts, this Court follows Judge Haines and expressly adopts the "totality of the circumstances" approach to deciding § 523(a)(8) cases.

Therefore, in order for this Debtor's student loans to be discharged in bankruptcy for undue hardship, he must prove by a preponderance of the evidence, that (1) his past, present, and reasonably reliable future financial resources; (2) his and his dependents' reasonably necessary living expenses, and; (3) other relevant facts or circumstances particular to the Debtor's case are such that excepting the student loans from discharge will prevent the Debtor from maintaining a minimal standard of living, even with the advantage of a discharge of his other pre-petition debts. *See Kopf*, 245 B.R. at 739.

## V. ANALYSIS

■ In an action to determine the applicability of the discharge exception to a debtor's student loans, the creditor bears the initial burden of proving the existence of a debt and that the debt is of a type excepted from discharge under the terms of § 523(a)(8). *See Koch v. Pennsylvania Higher Educ. Assistance Assoc., et al. (In re Koch)*, 144 B.R. 959, 963 (Bankr. W.D.Pa.1992). Once the creditor satisfies that burden, the debtor must then prove that excepting the debt from discharge will cause the debtor and the debtor's dependents undue hardship. *See Ledbetter v. United States Dept. of Educ. (In re Ledbetter)*, 254 B.R. 714, 716 (Bankr.S.D.Ohio 2000). Prior to trial, the Debtor stipulated to the existence of the debts and that all debts at issue in this case qualified as exceptions to discharge under § 523(a)(8). Pre–Trial Stipulation, ¶ A. 3. Therefore, the Court confines itself to determining whether the Debtor satisfied his burden of proving that excepting the student loans from his discharge will cause him or his dependents undue hardship.

■ As stated above, I have concluded that the proper analysis for determining whether excepting this Debtor's student loans from discharge will cause undue hardship requires that the Debtor prove that (1) his past, present, and reasonably reliable future financial resources; (2) his and his dependents' reasonably necessary living expenses, and; (3) other relevant facts or circumstances unique to his case prevent him from paying his student loans while still maintaining a minimal standard of living even when aided by a discharge of other pre-petition debts. *See Kopf*, 245 B.R. at 739. In this case, the Court is satisfied that the Debtor has shown that his income, less reasonably necessary living expenses, leaves a modest monthly surplus of slightly less than $600.00. Additionally, given the Debtor's spouse's support obligations to her own children, the Court views the Debtor's spouse's income as, at best, an economic buffer between the Debtor and unforeseen drains on his own monetary resources. The Court, there-

fore, does not view the Debtor's spouse as a significant economic resource from which he can draw aid in retiring these student loans.

Notwithstanding my conclusion that the Debtor will have little help paying his student loans, and that excepting them from discharge will impose some hardship, I do not believe the Debtor's present standard of living constitutes the "undue hardship" Congress contemplated when it drafted the statute. For example, the Debtor resides with his spouse in their own home, to which he contributes to the cost of, whether they are co-owners or not. The $120,000.00 purchase price of the home, which is large enough for the family of four, along with the Debtor's estimate of its appreciation, Tr. at 69, suggest that the Debtor's home is at least comfortable. *See Greco,* 251 B.R. at 677. Also, the Debtor indicated he and his wife each own and insure their own vehicles. *Id.* Nothing shows these automobiles are new or in any way lavish, but, in any event, others less fortunate might reasonably consider ownership of a personal automobile a luxury.

■ The Debtor also testified that he is able to take vacations, such as camping trips with his spouse and her children. The Court acknowledges such trips can in fact be a frugal form of relaxation, but it is nevertheless not what this Court considers a "reasonably necessary living expense" the Debtor could not cut from his budget and still maintain a minimal standard of living. *See Lohr v. Sallie Mae, et al. (In re Lohr),* 252 B.R. 84, 88–89 (Bankr. E.D.Va.2000). The Court in no way means to imply that a finding of economic hopelessness is required to meet the undue hardship standard. *See Kopf,* 245 B.R. at 744–45; *cf. Randall v. Norwest Student Loan Serv. (In re Randall),* 255 B.R. 570 (Bankr.D.N.D.2000). However, the Court feels this Debtor, while living on a tight budget, still enjoys things one could consider amenities, *and* he has a monthly monetary surplus.

■ It is true, paying his student loans may preclude him from making other ex-

penditures he considers necessary, such as life insurance or disability insurance, or to begin providing for retirement. The Debtor's inability to afford such things, though, does not diminish the Debtor's present standard of living. *See Luna v. Educational Credit Mgmt. Corp. (In re Luna),* 236 B.R. 291, 294 (Bankr.M.D.Fla.1999). Furthermore, as such expenses arguably benefit the Debtor's spouse, it is reasonable to expect her to bear some or all of such expenses while the Debtor devotes his monthly income surplus to his student loans.

■ In addition, the Debtor admitted he deliberately did not seek employment outside the community where he lives. The Court is cognizant of the presently robust employment market and finds the Debtor's unwillingness to search for more lucrative employment a circumstance to consider. *See Salinas v. United Student Aid Funds, Inc. (In re Salinas),* 240 B.R. 305, 315–16 (Bankr.W.D.Wis.1999); *Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen),* 232 B.R. 127, 129 (8th Cir. BAP 1999) (affirming bankruptcy court finding of undue hardship for disabled debtor that relocated to another state to find employment). The Court views the Debtor's modest income as a direct result of his self-imposed geographic limitations. The Court is reluctant to reward the Debtor's lack of initiative to at least explore options that might enable the Debtor to afford his student loans *and* provide the income for other expenses he considers necessities.

Having made these observations, the Court points out that it is also mindful of the Debtor's other circumstances as described at trial, such as his age, delinquent tax obligations, and family situation. *See Brown v. Union Fin. Serv., Inc. (In re Brown),* 249 B.R. 525, 527–28 (Bankr. W.D.Mo.2000). Despite the fact that the Court today declares the Debtor's student loans non-dischargeable, the Court sincerely hopes the parties will work together in good faith to arrive at re-payment plans

that not only serves all involved but that also will not burden the Debtor for the remainder of his existence. As such, the Court urges the parties to employ devices internal to the student loan programs, such as forbearance or possibly even forgiveness of those portions of the debts that may make collection during the Debtor's lifetime a practical impossibility. The Court sees no benefit to the various Defendants engaging in an endless pursuit—possibly in vain—of anything more than monthly payments in amounts based on the Debtor's income and ability to pay.

### VI. CONCLUSION

For the reasons set forth herein, the Court will enter default judgment against WNEC and ASA, and the Debtor's obligations to these defendants, if any, are discharged by the Court's discharge order. As to student loans owed to ECMC, TERI, and PHEAA, the Court enters judgment for the Defendants and finds those student loan debts non-dischargeable. The Court abstains from deciding the Defendants' counterclaims against the Debtor. An Order consistent with this Decision to issue forthwith.